In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00294-CV
_____

**MORGAN GENTRY CARTWRIGHT AND JOE SHANNON
CARTWRIGHT, INDIVIDUALLY, AS TRUSTEES OF
THE CARTWRIGHT FAMILY INSURANCE TRUST,
AND AS CO-EXECUTORS OF THE ESTATE OF
JASPER DUNCAN CARTWRIGHT, Appellants**

**V.**

**RUSSELL DUNCAN CARTWRIGHT, Appellee**

_____

**On Appeal from the Probate Court No. 1
Montgomery County, Texas
Trial Cause No. 22-07-08776-CV**
_____

**MEMORANDUM OPINION**

Appellants Morgan Gentry Cartwright and Joe Shannon Cartwright,

Individually, as Trustees of the Cartwright Family Insurance Trust (the "Trust"), and

as Co-Executors of the Estate of Jasper Duncan Cartwright (collectively

"Appellants," or singularly "Gentry" and "Joe") filed a notice of appeal, and

Appellee Russell Duncan Cartwright ("Appellee" or "Russell") filed a cross-appeal,

1

pertaining to the trial court's[1] final judgment determining the ownership and assets in a Trust set up in 1987 by their parents, Jasper Duncan Cartwright ("Duncan") and Robbie Williams Cartwright ("Robbie"). Gentry and Joe argued that the Trust's only asset is the proceeds from a whole life insurance policy. Russell contends that the Trust's assets included the insurance proceeds and two tracts of real property, each of which was specifically described in an exhibit attached to the Trust agreement at the time the Trust was created, but Russell argued the exhibit had been lost. Gentry, Joe, and Russell agreed at trial that the proceeds from the insurance policy were part of the assets of the Trust, and they agreed to one-third ownership per brother. Gentry and Joe argued at trial that the two tracts at issue were never placed into the Trust and instead contend that the property passed pursuant to Duncan's Last Will which they contend names Gentry and Joe, but not Russell, as beneficiaries. Russell argued at trial that both tracts were placed into the Trust, both were described on the exhibit that is mentioned in the Trust, that the exhibit was lost, and each brother owns a one-third interest in assets in the Trust.

After submitting certain issues to the jury, the trial court accepted some findings and set aside other jury findings, and then entered a final judgment ordering that Russell, Gentry, and Joe each own a one-third interest in the assets held by the

[1] The underlying suit was originally filed by Gentry and Joe in the 457th Judicial District Court in Montgomery County. The case was later transferred to the Probate Court No. 1, where the case was tried before a jury.

2

Citizens State Bank in the name of the Trust[2] and that Tract I and Tract II (the two tracts at issue described in more detail below and referenced as the "Disputed Property") were transferred into the Trust, and the court declined to award either party attorney's fees and taxed costs against the party incurring same. For the reasons explained below, we affirm.

Undisputed Background Information

According to the Trust agreement, dated May 4, 1987, Duncan and Robbie created an irrevocable trust. Duncan and Robbie were the grantors, and Russell, Gentry, and Joe were the beneficiaries and co-trustees. Russell, the oldest son, was the only one of the children to go with his parents to the attorney's office when the Trust was created. In the Trust agreement it states: "Grantors have transferred and delivered the property described in the **attached exhibit**, to be held in trust for the uses and purposes hereinafter set forth[.]" (emphasis added).

Robbie died in August of 2003, and Duncan died in November of 2019. Robbie's Will conveyed all her property to Duncan, and Duncan's Will named only Gentry and Joe as beneficiaries. After Duncan's death, the insurance company paid the death benefit amount of $300,000 to the Trust, and Russell deposited that amount into an account at a bank and set up that account in the name of the Trust. Gentry

---

[2] This is the insurance policy proceeds, and the parties do not dispute that asset is part of the Trust.

and Joe claim they were not told that Russell had collected the insurance proceeds and that Russell had placed it into a bank account without their input, and after Duncan's Will was filed for probate, they found out Russell had deposited the insurance proceeds into a bank account.[3]

Initially, Gentry and Joe filed an Original Petition which named Russell, Russell's wife, and the Bank where the insurance proceeds were deposited, as defendants, and alleged a breach of fiduciary duty, constructive trust, and sought a declaratory judgment. The claims against Russell's wife and the Bank were dismissed by Summary Judgments.

Russell filed an answer and counterclaim and sought among other things a declaratory judgment declaring that the insurance proceeds and five tracts of land were part of the Trust. During trial, the parties agreed that only the following two Tracts (the "Disputed Property") were at issue:[4]

> TRACT I:
> Being the residue of that 207 acres of land in the Matthew Cartwright Survey, Abstract No. 126, Montgomery County, Texas, said **207 acre tract** being the property conveyed in Deed recorded in Volume 626, Page 86 of the Deed Records of Montgomery County, Texas. (Save and **except** tracts described in instruments recorded under clerk's file Nos. 2002029423 and 2017036759 of the real property records of Montgomery County, Texas.)[.]

---

[3] Russell had previously contested Duncan's Will, but the Will was admitted to probate and Russell is not a named beneficiary under Duncan's Will.

[4] The trial court entered an Order of Dismissal as to any claims to Tracts III, IV, and V.

4

TRACT II:
Being the North 1/2 of a 67.1 acre tract of land in the Matthew Cartwright Survey, Abstract No. 126, Montgomery County, Texas, said tract being the property conveyed in Deed recorded in Volume 626[,] Page 510 of the Deed Records of Montgomery County, Texas. (**33.55 acre tract**).

Prior to trial, the trial court granted Russell's motion for partial summary judgment as to Gentry and Joe's claims for breach of fiduciary duty and constructive trust. Additionally, after the trial court granted the partial summary judgment but before the jury trial, Gentry and Joe amended their petition, dropping all claims against Russell for anything other than a declaratory judgment and attorney's fees and asking the trial court to declare that Russell "has no ownership right" in the Disputed Property. In Russell's live counterclaim at the time of trial, Russell sought a declaratory judgment asking the trial court to declare the assets in the Trust, which he alleged included the insurance proceeds and the Disputed Property.

Evidence at the Jury Trial

Russell testified that he, Gentry, and Joe are brothers, and he is the oldest. Their parents, Duncan and Robbie, as grantors, created an irrevocable trust on May 4, 1987. The purpose of the Trust was for estate liquidity. On February 11, 1987, Russell accompanied Duncan and Robbie to a meeting with an attorney regarding the creation of certain documents, which included the Trust. Duncan and Robbie appointed Russell, Gentry, and Joe as trustees and beneficiaries of the Trust. When

5

Duncan and Robbie, as well as Russell, Gentry, and Joe each signed the Trust, all their signatures were notarized.

After the death of Duncan, the last surviving parent, a dispute arose between the brothers over the Trust's assets. Appellants, Gentry and Joe, alleged that the Trust's only asset was a survivorship whole life insurance policy. Appellee Russell argued that the Trust's assets included the whole life insurance policy and certain real property. Russell testified that he remembered that when the Trust was created there was an attached exhibit, and the exhibit listed the life insurance policy as well as the Disputed Property.[5] The Disputed Property is commonly referred to as the 207 acres ("Tract I") and the north half of a 67.1 acre-tract ("Tract II"). According to Russell, Tract I was inherited by Duncan. And Tract II had been purchased during the marriage of Duncan and Robbie and was owned by them at the time the Trust was created. Russell testified that when the Trust was created, he saw the referenced exhibit and that it referenced the insurance which was to be purchased, as well as the two tracts of land as they had discussed at the meeting with the attorney on February 11, 1987. Russell testified that after Duncan died, he could not find the exhibit to the Trust and that the exhibit was lost. Russell explained that after his father died, he began searching for the records, and in August of 2022, he became aware that the

---

[5] The first paragraph under Recitals on the first page of the Trust provides: "1. Grantors have transferred and delivered the property described in the attached exhibit, to be held in trust for the uses and purposes hereinafter set forth[.]"

exhibit was lost. Later in the trial, Russell testified specifically that he searched his home office, his filing cabinets, his computer, and his home safe. Russell asserted that he was not able to find the exhibit and confirmed that no one had found it and that the exhibit remains missing. Russell stated that he had purchased the life insurance policy with the approval of both Gentry and Joe as co-trustees. In his role as co-trustee, Russell confirmed that he managed the insurance policy and that he would receive funds from Duncan to pay the premiums for the insurance policy. Russell testified that he received annual statements and bills in the mail.

Joe testified that he had never seen an exhibit attached to the Trust. Joe further testified that there was no other property that was placed into the Trust besides the insurance. Gentry also testified that to his knowledge there was never an exhibit to the Trust.

All three brothers testified that none of them, as trustees, had ever managed either Tract I or Tract II. Joe testified that his parents had managed Tract I and Tract II while they were alive, and that Duncan had paid the taxes and insurance on the two tracts while he was living. Gentry testified that his father, Duncan, had managed both Tract I and Tract II adding that, "nobody would have told [Duncan] what to do with his own land[.]" At trial, all three brothers agreed that the payment from the insurance policy, $300,000, was an asset of the Trust. The parties also presented

7

evidence to the jury regarding the amount of their attorney's fees, costs, and expenses in the litigation, and anticipated fees pertaining to an appeal.

The parties do not complain on appeal about the instruments offered into evidence at trial, including but not limited to a copy of the Trust, a copy of deeds and instruments of record, a copy of the application of the life insurance policy which identified its primary purpose was "estate liquidity," a copy of a letter from Woodard, Hall & Primm, the attorneys who drafted the Trust, which stated the Trust was "funded" as of May 14, 1987, and a copy of the insurance policy which was not effective until August 28, 1987, after it was purchased by Russell (with the permission of Gentry and Joe) as per the requirements of the Trust.

### Jury Verdict, JNOV, and Final Judgment

The case was submitted to the jury, and the jury charge contained nine stated issues. The issues and jury's responses were as follows:

QUESTION NUMBER 1

Did Russell Cartwright establish by clear and convincing evidence that there is an exhibit to The Trust that was lost?

"Loss" of a document is established by proof of search for a document and an inability to find it.

"Clear and convincing evidence" is that measure or degree of proof that will produce in the mind of the jury a firm belief or conviction as to the truth of the allegations sought to be established.

Answer "Yes" or "No."
Answer: Yes

8

If you answered "Yes" to the previous question, then answer this question. Otherwise, do not answer this question.

## QUESTION NUMBER 2

Did Russell Cartwright establish, by clear and convincing evidence, that the lost exhibit, if any, conveys the Disputed Property to The Trust?

> "Clear and convincing evidence" is that measure or degree of proof that will produce in the mind of the jury a firm belief or conviction as to the truth of the allegations sought to be established.

Answer "Yes" or "No".
Answer: Yes

If you answered "Yes" to the previous question, then answer this question. Otherwise, do not answer this question.

## QUESTION NUMBER 3

Was the exhibit, if any, lost before July 11, 2018?

Answer "Yes" or "No".
Answer: No

If you answered "Yes" to question 2, then answer this question. Otherwise, do not answer this question.

## QUESTION NUMBER 4

Did Joe Shannon Cartwright fail to comply with his duty as trustee when he failed to take action to distribute Russell Cartwright's share, if any, of the Disputed Property to Russell Cartwright[?]

> A trustee fails to comply with his duty as trustee if he fails to act in good faith or fails to act in accordance with the purposes of the trust.

> "Good Faith" means an action that is prompted by honesty of intention and a reasonable belief that the action was probably correct.

9

Answer "Yes" or "No"
Answer: Yes

QUESTION NUMBER 4a

If you have answered "Yes" to the above question, identify the date(s) on which there was a failure to comply.

Answer: 17 Nov 2019

If you answered "yes" to Question 4, then answer the following question. Otherwise, do not answer the following question.

QUESTION NUMBER 5

Did Joe Shannon Cartwright engage in the conduct inquired about in Question 4 in bad faith?

> "Bad faith" means an action or omission that is prompted by some improper motive rather than by an honest mistake or a reasonable belief that the action was probably correct.

Answer "Yes" or "No".
Answer: Yes

If you answered "Yes" to question 2, then answer this question. Otherwise, do not answer this question.

QUESTION NUMBER 6

Did Morgan Gentry Cartwright fail to comply with his duty as trustee when he failed to take action to distribute Russell Cartwright's share, if any, of the Disputed Property to Russell Cartwright[?]

> A trustee fails to comply with his duty as trustee if he fails to act in good faith or fails to act in accordance with the purposes of the trust.

> "Good Faith" means an action that is prompted by honesty of intention and a reasonable belief that the action was probably correct.

Answer "Yes" or "No"

10

Answer: Yes

QUESTION NUMBER 6a
If you have answered "Yes" to the above question, identify the date(s) on which there was a failure to comply.

Answer: 17 Nov 2019

If you answered "yes" to Question 6, then answer the following question. Otherwise, do not answer the following question.

QUESTION NUMBER 7
Did Morgan Gentry Cartwright engage in the conduct inquired about in Question 6 in bad faith?
"Bad faith" means an action or omission that is prompted by some improper motive rather than by an honest mistake or a reasonable belief that the action was probably correct.

Answer "Yes" or "No".
Answer: Yes[6]

Gentry and Joe filed a motion for judgment notwithstanding the verdict. The trial court granted the motion in part by setting aside the jury's affirmative answers to questions regarding whether Appellants engaged in bad faith.

The Final Judgment entered by the trial court, recited the following:

. . . .

3.    During trial, the parties stipulated and agreed to issues not presented to the jury. The parties stipulated and agreed that:

---

[6] Question 8 asked the jury to determine reasonable and necessary attorney's fees for the services of Russell's attorneys, and Question 9 asked the jury to determine reasonable and necessary attorney's fees for the services of Gentry and Joe's attorneys. The jury entered an amount for each and every subpart of question 8, but the jury entered zero for each and every subpart of Question 9.

11

A.  all assets held in trust by the Citizens State Bank in the name of the Cartwright Family Trust, including funds from a death-benefit paid by Massachusetts Mutual Insurance Company on the Survivorship Whole Life Insurance Policy No. 7-327-326 and all interest accruing from these funds, are assets funding the trust created on May 4, 1987 by Jasper Duncan Cartwright and Robbie Williams Cartwright (herein also referred to as "**trust**").

B.  Morgan Gentry Cartwright, Joe Shannon Cartwright and Russell Duncan Cartwright are the co-trustees and the sole equal beneficiaries of the trust created on May 4, 1987 by Jasper Duncan Cartwright and Robbie Williams Cartwright, and

C.  all assets funding the trust created on May 4, 1987 by Jasper Duncan Cartwright and Robbie Williams Cartwright shall be divided equally among the beneficiaries one-third each.

. . . .

5.  It is ORDERED, ADJUDGED AND DECREED that Russell Duncan Cartwright, Morgan Gentry Cartwright, and Joe Shannon Cartwright, each own one-third interest in all assets held in trust by the Citizens State Bank in the name of the Cartwright Family Trust.

6.  It is further ORDERED, ADJUDGED, DECLARED AND DECREED that all rights, title and interest in the following tracts of real property were transferred and conveyed on May 4, 1987 from Jasper Duncan Cartwright and Robbie Williams Cartwright to the trust created on May 4, 1987:

TRACT I:
Being the residue of that 207 acres of land in the Matthew Cartwright Survey, Abstract No. 126, Montgomery County, Texas, said 207 acre tract being the property conveyed in Deed recorded in Volume 626[,] Page 86 of the Deed Records of Montgomery County, Texas. (Save and except tracts described in instruments recorded under clerk's file Nos. 2002029423 and 2017036759 of the real property records of Montgomery County, Texas.)

TRACT II:
Being the North 1/2 of a 67.1 acre tract of land in the Matthew Cartwright Survey, Abstract No. 126, Montgomery County, Texas, said tract being the property conveyed in Deed recorded in Volume 626[,] Page 510 of the Deed Records of Montgomery County, Texas. (33.55 acre tract).

12

7.      The Court finds, declares and ORDERS that each trust beneficiary, Morgan Gentry Cartwright, Joe Shannon Cartwright and Russell Duncan Cartwright, owns an undivided one-third interest in the above described real property.

8.      The Court finds that it is neither equitable [n]or just to award attorneys fees in this case.

All costs of court expended or incurred in this cause are the responsibility of the party incurring said costs.*

. . . .

*The trust agreement precludes liability without certain criteria which have not been met in this case.

Issues on Appeal

Appellants, Gentry and Joe, raise four issues on appeal. In the first issue, Appellants argue that the trial court erred in allowing testimony regarding the alleged contents of a lost document, when a proper predicate had not been laid. In the second issue, they challenge the legal and factual sufficiency of the evidence regarding the contents of the lost document to support the jury's verdict. In the third issue, they challenge the legal sufficiency of the evidence to support the jury's verdict that the property was conveyed to the Trust. And, in the fourth issue, they argue that the trial court erred in granting Appellee's partial summary judgment.

On cross-appeal, Russell, as Appellee and Cross-Appellant, also raises four issues. In his first issue on cross-appeal, he argues that the trial court committed reversible error in granting, in part, a JNOV that eliminated the jury's finding of bad faith. In his second issue on cross-appeal, he argues that the trial court committed reversible error in denying him an award of attorneys' fees at trial. In his third issue

13

on cross-appeal, he argues that the trial court committed reversible error in denying his award of conditional attorneys' fees in the event of appeal. And, in his fourth issue on cross-appeal, he argues that the trial court committed reversible error in denying his award of prejudgment interest, post judgment interest, and court costs.

Standard of Review And Applicable Law

Evidentiary Rulings

We apply an abuse of discretion standard of review to a trial court's evidentiary rulings. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). A trial court abuses its discretion when it acts without regard to guiding rules or principles. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We will uphold the lower court's decision if it is within the zone of reasonable disagreement. *Diamond Offshore Servs., Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018). We will not reverse a trial court's judgment based on the erroneous admission of evidence unless we conclude that the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). In determining whether the erroneous admission of evidence was harmful, we review the entire record. *Interstate Northborough*, 66 S.W.3d at 220. The erroneous admission of evidence is harmless if the evidence is merely cumulative of the other evidence admitted at trial. *Nissan*

*Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). The complaining party

must demonstrate that the judgment turns on the evidence that was admitted. *Id.*

Legal and Factual Sufficiency of Evidence

"Challenges to the legal sufficiency of the evidence are either 'no evidence'

challenges or 'matter of law' challenges, depending on which party bore the burden

of proof at trial." *Jefferson Cnty. v. Nguyen*, No. 09-13-00505-CV, 2015 Tex. App.

LEXIS 8052, at *25 (Tex. App.—Beaumont July 31, 2015, no pet.) (mem. op.)

(citation omitted). A party challenging the legal sufficiency of the evidence to

support an adverse finding on which he did not have the burden of proof at trial must

demonstrate no evidence supports the adverse finding. *See Exxon Corp. v. Emerald*

*Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011); *Nguyen*, 2015 Tex. App. LEXIS

8052, at *25; *see also Graham Cent. Station, Inc. v. Pẽna*, 442 S.W.3d 261, 263

(Tex. 2014).

In a legal sufficiency review, we must consider all the evidence "'in the light

most favorable to the party in whose favor the verdict has been rendered,'" and

"'every reasonable inference deducible from the evidence is to be indulged in that

party's favor[.]'" *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (quoting

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

Evidence is legally insufficient to support a jury finding when: (1) the record

discloses a complete absence of evidence of a vital fact; (2) the court is barred by

15

rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016) (citations omitted); *McBeth v. Servpro Indus.*, No. 09-22-00272-CV, 2024 Tex. App. LEXIS 8955, at **34-35 (Tex. App.—Beaumont Dec. 19, 2024, pet. denied) (mem. op.). As the sole judges of the witnesses' credibility and the weight to give their testimony, the jurors may choose to believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). We "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827; *Senegal v. Payne*, No. 09-13-00508-CV, 2015 Tex. App. LEXIS 6787, at *6 (Tex. App.—Beaumont July 2, 2015, no pet.) (mem. op.). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at *8. "We will uphold the jury's finding if more than a scintilla of competent evidence supports it." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citation omitted). We presume jurors made all inferences for the verdict, but only if reasonable minds could do so. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). "Jurors may not simply speculate that a particular inference arises from the evidence." *Id.* (citing *City of Keller*, 168 S.W.3d at 821).

16

When challenging the factual sufficiency of the evidence supporting an adverse finding on which the appellant did not have the burden of proof at trial, the appellant must demonstrate that insufficient evidence supports the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). When reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the jury's finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). We set aside a finding only if it "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985) (citation omitted).

<u>Analysis of Appellants' First Issue</u>

In the Appellants' first issue, Appellants contend that the trial court abused its discretion by allowing Russell to testify regarding the existence and the contents of an allegedly lost exhibit or document without satisfying the proper predicate, and that this error resulted in an improper judgment. For the reasons outlined below, we overrule this issue.

During trial, Gentry and Joe's trial attorney objected when Russell testified about the Trust and when he provided his recollection of the contents of the exhibit that was referenced in the Trust. The following exchange occurred during the direct examination of Russell during trial:

Q. In the trust, is there a reference to an attached exhibit?
A. There is.

17

Q. And this exhibit and whatever property is described in the exhibit, is it held in trust?

A. Yes.

Q. So the trust agreement itself refers to an exhibit?

A. Yes.

Q. Was an exhibit attached?

A. Yes.

Q. And has this exhibit been lost?

A. Yes.

Q. And this exhibit, I want to ask you questions about what was involved in the exhibit. What were the contents of the exhibit that was lost?

[GENTRY AND JOE'S ATTORNEY]: Objection. Failure to lay the proper predicate.

THE COURT: Overruled.

THE WITNESS: The contents was, number one, a $300,000 insurance policy from Mass Mutual.

[GENTRY AND JOE'S ATTORNEY]: Objection. To the extent that there is anything further than that also calls for hearsay to the extent that he's testifying about a document in evidence and the proper predicate, as I mentioned before, has not been laid.

THE COURT: How does it overcome hearsay?

[RUSSELL'S ATTORNEY]: It is the contents of an exhibit that he's seen with his own eyes.

[GENTRY AND JOE'S ATTORNEY]: And that is hearsay?

[RUSSELL'S ATTORNEY]: He is entitled -- extrinsic evidence may be used to prove up a lost document, Your Honor.

THE COURT: How about it's the operative document?

[GENTRY AND JOE'S ATTORNEY]: I do not believe that that applies because you have to actually have the document. I mean, obviously, when you have a will, when you have a trust, when you have these documents, that is an operative document. This is not because we don't actually have the documents, and there is a whole procedure -- maybe we do this in front of the bench. I'm sorry.

(Bench conference begins with white noise.)

[GENTRY AND JOE'S ATTORNEY]: So the general rule is you can't testify from a document that is not evidence. Even if you've seen it, even if you've memorize[d] it, it's hearsay. There are all sorts of exceptions, but the rules of evidence specifically say the predicate that has to be laid, if you are going to offer proof from a lost document.

18

He has not met that predicate. I've got cases and I'd be happy to provide these.

[RUSSELL'S ATTORNEY]: The predicate is describing what the document said. Part of it is where the document was attached, when it was designed, when it was drafted, how it was prepared, and what were the contents of the documents were. That's why I was asking those questions to lay the predicate.

What she is effectively suggesting is we cannot prove up a lost document. She is saying that the contents of a lost document may not be proven up and that's incorrect. We can use extrinsic evidence to prove up a lost document. That's always been the law. What she is effectively arguing is that if you don't have a writing that meets the hearsay exception, you can't prove up a lost document that's not before the court.

[GENTRY AND JOE'S ATTORNEY]: That's not my argument.

THE COURT: . . . It's overruled.

(Bench conference ends.)

. . . .

Q. In the exhibit that was attached to the trust that was created of May 4th, 1987, was a legal description included of this land?

[GENTRY AND JOE'S ATTORNEY]: Objection. Hearsay and failure to meet the proper predicate.

THE COURT: Overruled.

[GENTRY AND JOE'S ATTORNEY]: . . . Judge, may I have a running objection on this line of questioning[?]

THE COURT: Yes, ma'am.

As a prerequisite to preserving a complaint for appellate review, the record must show that the complaining party made a timely and specific objection with sufficient specificity to make the trial court aware of the complaint unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a); *Dewitt v. State*, 651 S.W.3d 669, 676 (Tex. App.—Houston [14th Dist.] 2022, no pet.). "An objection to the admission of evidence must be reasonably specific so as to apprise the trial court of its legal basis. A mere objection based on improper

19

predicate requires trial counsel to inform the trial court exactly how the predicate is deficient." *Mutz v. State*, 862 S.W.2d 24, 30 (Tex. App.—Beaumont 1993, pet. ref'd); *Dabney v. Keene*, 195 S.W.2d 682, 684-85 (Tex. Civ. App.—El Paso 1946, writ ref'd n.r.e.) (merely objecting to testimony or evidence because a proper predicate has not been established is too general of an objection to warrant consideration because it fails to specify why the predicate is inadequate).

That said, a trial court has discretion in determining whether a predicate has been laid and based on the record before us, "we are not inclined to hold that there is a showing of such abuse of that discretion as would warrant a holding that reversible error has been committed." *See Pacific Mid-Continent Corp. v. Tunstill*, 159 S.W.2d 908, 912 (Tex. Civ. App.—Fort Worth 1942, n.w.h.); *see also Gibson v. State*, 121 S.W.2d 361, 363 (Tex. Crim. App. 1938) ("Proof of loss of a document or written instrument and the accounting for its nonproduction, in order to admit the introduction of secondary evidence, is addressed to the sound discretion of the trial court to be governed by the circumstances of the case."). This rule also applies in the context of proving the contents of a lost Trust agreement because Texas Rule of Evidence 1004 may be used to show "other evidence" of the Trust. *See, e.g., Gause v. Gause*, 496 S.W.3d 913, 919 (Tex. App.—Austin 2016, no pet.); *In re Estate of Berger*, 174 S.W.3d 845, 848-49 (Tex. App.—Waco 2005, no pet.).Texas Rule of Evidence 1004(a) expressly allows a party to introduce evidence of the

contents of a writing if the original is lost or destroyed, unless the proponent of the evidence destroyed the evidence in bad faith. Tex. R. Evid. 1004(a); *Jurek v. Couch-Jurek*, 296 S.W.3d 864, 871 (Tex. App.—El Paso 2009, no pet.). Here, there is no allegation or evidence that Russell destroyed the exhibit or that he acted in bad faith.

When Appellants' counsel made her objection during trial to the lack of a "proper predicate[,]" and the trial court overruled the objection, the trial attorney did not explain to the trial court that her complaint was that Russell had not yet testified about his search for the document. And without that additional detail, the objection was on its face inadequate. *See Mutz*, 862 S.W.2d at 30.

On further redirect of Russell, he also included a description of what he did to search for the lost exhibit when he provided the following testimony:

> Q. Now for the better part of the testimony over a week we have been talking about an exhibit, is your allegation that that exhibit is lost?
> A. Yes, it is.
> Q. And have you ever searched for that document?
> A. Yes, I started searching in earnest for it after August of 2022.
> Q. And now I want to ask about your search. So please restrict your answer to the search. What did you look through in order to find the missing exhibit?
> A. Well, I looked through all the records I had in my file cabinets, if I had anything on the computer, just normally the place that you would search, home office, anywhere you'd think you'd find something like that.
> Q. Did you look through your computer records for a scanned copy of it?
> A. Yes.

Q. Did you look through a home safe or something which you keep your deeds?

A. Yes, yes, I did.

Q. And were you able to find the lost exhibit that was originally attached to the trust?

A. No, I did not.

Q. Is that exhibit -- has anyone found that exhibit?

A. No.

Q. So it remains missing today?

A. Correct.

Q. And that's the exhibit that included the language regarding the life insurance policy; is that correct?

A. Yes.

Q. And the legal description of the 207 acres?

[GENTRY AND JOE'S ATTORNEY]: Objection. Leading.

THE WITNESS: Yes, and the –

THE COURT: Hang on. Hang on a second. It's overruled.

[RUSSELL'S ATTORNEY]: You may answer.

THE WITNESS: Yes, it contained all three items, the 207 acres, and then the half of the 67 which everybody knows about, we've been talking about, and the policy.

Q. (By [RUSSELL'S ATTORNEY]) For the sake of specificity, I want to show you a legal description for the 207 acres that is in the deed, Exhibit D-18. Do you see that?

A. Yes.

Q. And is [it] the same language that's in the exhibit that is lost?

A. Yes, it was a legal description of it.

Q. I want to show you, this is the legal description of the one-half of 67.2 acres. Do you recognize that?

A. Yes.

Q. And is this the legal description that was attached to the lost exhibit?

A. It is.

Q. And by lost exhibit, I am referring to the exhibit referenced in the first recital of the trust?

A. Correct.

Q. When did you first become aware that the exhibit was lost?

A. It would be after my father died, when I started searching for the records.

The trial court could have reasonably concluded from the testimony provided by Russell that a proper predicate was established to allow him to testify about the contents of the lost exhibit. We cannot say that the trial court abused its discretion in overruling the objection. *See Aldridge*, 438 S.W.3d at 27-29. We overrule Appellants' first issue.

Analysis of Appellants' Second and Third Issues

In their second issue, the Appellants challenge the legal and factual sufficiency of the evidence regarding the contents of the lost document (i.e., the missing exhibit to the Trust) to support the jury's verdict. In their third issue, they challenge the legal sufficiency of the evidence to support the jury's verdict that the Disputed Property was conveyed to the Trust. We consider these issues together because the challenges both concern the jury's responses to jury questions 1 and 2.

To recap, the two jury questions and responses were as follows:

QUESTION NUMBER 1
Did Russell Cartwright establish by clear and convincing evidence that there is an exhibit to The Trust that was lost?

"Loss" of a document is established by proof of search for a document and an inability to find it.

"Clear and convincing evidence" is that measure or degree of proof that will produce in the mind of the jury a firm belief or conviction as to the truth of the allegations sought to be established.

Answer "Yes" or "No."
Answer: Yes

QUESTION NUMBER 2

Did Russell Cartwright establish, by clear and convincing evidence, that the lost exhibit, if any, conveys the Disputed Property to The Trust?

> "Clear and convincing evidence" is that measure or degree of proof that will produce in the mind of the jury a firm belief or conviction as to the truth of the allegations sought to be established.

Answer "Yes" or "No."
Answer: Yes

To ascertain a settlor's intent, we look to the four corners of the trust instrument. *Boyce v. Boyce*, Nos. 01-21-00166-CV & 01-21-00477-CV, 2022 Tex. App. LEXIS 8879, at \*37 (Tex. App.—Houston [1st Dist.] Dec. 6, 2022, pet. denied) (mem. op.) (citing *Myrick v. Moody Nat'l Bank*, 336 S.W.3d 795, 802 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Hurley v. Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). So that no trust provision is rendered meaningless, the court should construe a trust instrument to give effect to all its provisions. *Id.* at \*\*37-38 (citing *Myrick*, 336 S.W.3d at 802). Based on the four corners of the Trust, and the express language in the Trust, it is reasonable to conclude that the Trust had an exhibit attached to it that listed the assets placed in the Trust. The Trust specifically contained a reference to an exhibit under its recitals heading. The Trust also addressed partition under its general provisions and powers heading, which is a unique procedure necessary for the division of an undivided piece of real property between joint owners. *See generally Rivers v. Page*,

24

No. 09-19-00312-CV, 2021 Tex. App. LEXIS 3944, at **15-18 (Tex. App.—Beaumont May 20, 2021, no pet.)(mem. op.) (explaining the steps in a partition suit); *Dierschke v. Cent. Nat'l Branch of First Nat'l Bank of Lubbock,* 876 S.W.2d 377, 379-80 (Tex. App.—Austin 1994, no writ) (partition severs rights of possession to an undivided piece of property). The jury could have found the evidence to be clear and convincing that there was an exhibit that had been lost, based on the Trust language, as well as Russell's testimony regarding the creation and signing of the Trust, and the purpose of the Trust to preserve estate liquidity.

It was in the jury's discretion to weigh the testimony of the witnesses and accept or reject any part of the testimony. *In re Estate of Montemayor*, No. 09-21-00054-CV, 2023 Tex. App. LEXIS 1174, at *47 (Tex. App.—Beaumont Feb. 23, 2023, pet. denied) (mem. op.) (citing *City of Keller*, 168 S.W.3d at 819). The jury heard conflicting testimony regarding the existence of the exhibit. The jury heard testimony from Russell, Gentry, and Joe. As the sole judge of the credibility of witnesses and the weight to be given to their testimony, the jury may choose to believe one witness and disbelieve another. *See id.* (citing *City of Keller*, 168 S.W.3d at 819). The jury could have believed Russell that he saw the exhibit when he and his parents were at the attorney's office, and that the missing or lost exhibit listed the Disputed Property, as well as the proceeds of an insurance policy, which was to be purchased for the Trust. The jury could have considered the language in the Trust

25

that expressly states "Grantors have transferred and delivered the property described in the attached exhibit, to be held in trust for the uses and purposes hereinafter set forth," as well as the letter from the attorney who drafted the Trust which stated the Trust had been funded as of May 14, 1987, which was before the insurance policy was purchased in August of 1987, and could have reasonably concluded that there was an exhibit, it had been lost, and that the exhibit included the Disputed Property. Russell testified that the exhibit had been lost and that he had been unable to locate it or find a copy of it. After reviewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support the jury's finding there was an exhibit that had been lost, and that the lost exhibit listed not only the purchase of an insurance policy, but also the Disputed Property as assets of the Trust. *See City of Keller*, 169 S.W.3d at 827.

After considering and weighing all the evidence in support of and contrary to the jury's findings, we also conclude the evidence was factually sufficient to support the jury's findings on both of the jury questions at issue. *See Mar. Overseas Corp.*, 971 S.W.2d at 406-07. We cannot say that the evidence "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Dyson*, 692 S.W.2d at 457 (citation omitted). Accordingly, we overrule Appellants' second and third issues.

26

<u>Analysis of Appellants' Fourth Issue</u>

In their fourth issue, the Appellants argue that the trial court erred in granting Appellee's partial summary judgment. The lawsuit was originally pending before the 457th Judicial District Court in Montgomery County and the trial court judge in that court made several interlocutory rulings including granting a motion for partial summary judgment in favor of Russell dismissing each of Gentry and Joe's claims against Russell except for the declaratory judgment claim. The case was then transferred to Probate Court No. 1 in Montgomery County for further proceedings and trial after a contested hearing on a motion filed in the probate court by Gentry and Joe to transfer and consolidate. After the case was transferred, but not consolidated, to the Probate Court and prior to the jury trial, Gentry and Joe amended their petition, dropping all claims against Russell for anything other than a declaratory judgment. The only cause of action asserted against Russell by Gentry and Joe asked for the trial court to declare that Russell "has no ownership right" in the Disputed Property.

"Under the rules of civil procedure, an amended pleading supersedes all previous pleadings." *Hartman v. Walker*, No. 09-21-00084-CV, 2023 Tex. App. LEXIS 6314, at *43 (Tex. App.—Beaumont Aug. 17, 2023, no pet.) (mem. op.) (citing Tex. R. Civ. P. 65). To avoid waiver, a party may specifically state that they are preserving their right to appeal a prior ruling in an amended petition and reserve

27

their right to appeal. *Id.* at \*44 n.63 (citing *F.K.M. P'ship, Ltd. v. Bd. of Regents of the Univ. of Hous. Sys.*, 255 S.W.3d 619, 633 (Tex. 2008)). Appellants' amended petition did not include any statement or indication that they were preserving their other claims when Appellants amended their petition after the district court had previously granted summary judgment. Accordingly, they effectively abandoned their previous claims. *See id.* at \*\*43-44. We overrule Appellants' fourth issue.

Appellee's Cross Points

Appellee argues that the trial court committed reversible error in granting, in part, a judgment notwithstanding the verdict eliminating the jury's finding of bad faith as to Gentry and Joe's failure to distribute the Trust property to Russell. The jury answered yes to both Jury Issues 5 and 7. In Appellants' Motion for Judgment Notwithstanding the Verdict, Appellants argued that Appellee had not presented any evidence of bad faith by either Gentry or Joe in failing to convey the Disputed Property to Russell.

A trial court may grant a motion to disregard the jury's verdict only if a directed verdict would have been proper. Tex. R. Civ. P. 301; *Senegal*, 2015 Tex. App. LEXIS 6787, at \*\*5-6. The standard of review for a judgment notwithstanding the verdict is the same standard of review as a legal sufficiency, or no-evidence challenge. *See Bank of N.Y. Mellon v. Hall*, No. 09-00102-CV, 2025 Tex. App. LEXIS 3526, at \*75 (Tex. App.—Beaumont May 22, 2025, no pet.). Legally

28

sufficient evidence "would enable reasonable and fair-minded people to reach the verdict under review." *Senegal*, 2015 Tex. App. LEXIS 6787, at *6 (quoting *City of Keller*, 168 S.W.3d at 827). Evidence is legally insufficient to support a jury finding when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Crosstex N. Tex. Pipeline, L.P*, 505 S.W.3d at 613 (citations omitted); *McBeth*, 2024 Tex. App. LEXIS 8955, at **34-35. When applying the applicable standard, in order to justify the trial court's decision to disregard the jury's verdict as to bad faith, the record must conclusively show that the jury could reach only one decision on the issues regarding bad faith by Gentry or Joe that were submitted to it; and that no reasonable factfinder would conclude that based on the record that Russell was entitled to the recovery he sought. *See Senegal*, 2015 Tex. App. LEXIS 6787, at *6; *McBeth*, 2024 Tex. App. LEXIS 8955, at **35-36. Our Court has held that "[b]ad faith is not just intentional conduct but intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts." *Patton v. Echols*, No. 09-22-00334-CV, 2024 Tex. App. LEXIS 7751, at *70 (Tex. App.—Beaumont Oct. 31, 2024, no pet.) (mem. op.) (citing *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 719 (Tex. 2020)). This Court further held that

"'[b]ad faith' includes consciously doing wrong for a dishonest, discriminatory, or malicious purpose." *Id.* (citing *Brewer*, 601 S.W.3d. at 719) (quoting *Pearson v. Stewart*, 314 S.W.3d 242, 248 (Tex. App.—Fort Worth 2010, no pet.)). If there is no direct evidence of bad faith, the record must reasonably give rise to an inference of intent or willfulness. *Id.* The Jury Charge included the following definition for bad faith:

> "Bad faith" means an action or omission that is prompted by some improper motive rather than by an honest mistake or a reasonable belief that the action was probably correct.

The entire trial focused on the lost exhibit mentioned in the Trust and whether Tract I and Tract II were part of the Trust. The record reflects that during trial, Gentry and Joe disputed that Tract I and Tract II were part of the Trust, and their testimony disputed whether there was an exhibit listing those tracts as part of the Trust. The trial court, in granting a partial judgment notwithstanding the verdict, determined that there was no evidence in the record to support the jury's finding of bad faith for the alleged failure to distribute the property to Russell. In his appellate brief, Russell asserts the following to support the jury's finding of bad faith by Gentry and Joe: their alleged rejection of certified mail sent from Russell, their alleged refusal to communicate with Russell between the years 1987 and 2019, their alleged lack of communication with the life insurance policy agent, their attempt to remove and replace the agent on the life insurance policy without informing Russell, their alleged

30

effort to exclude Russell from his share of the Trust, their alleged false accusations against Russell, and Joe's call to the sheriff when Russell entered the 207-acre tract.

Jury Questions 5 and 7 were tied to Jury Questions 4 and 6 and pertained to the duty of Gentry and Joe, as Trustees, and their alleged failure to distribute the Disputed Property to Russell. In response to Jury Question Numbers 4a and 6a, the jury answered that Gentry and Joe failed to take action on November 17, 2019. The trial court, when setting aside the jury's findings, could have concluded that the record does not support the jury's finding on this issue because there was a genuine issue of material fact regarding whether the lost exhibit listed the Disputed Property. In the cross-appeal, Russell claims that there was evidence that Gentry and Joe in *bad faith* failed to distribute the Disputed Property. While the record shows that Gentry and Joe did not communicate often with Russell between the years 1987 and 2019, there was no evidence that this lack of communication was a product of bad faith by Gentry and Joe linked to the Disputed Property. In fact, up until the trial it is abundantly clear from the pleadings that the issue of what was included on the "lost exhibit," was factually disputed between the parties. Nor does the record contain evidence of how an alleged lack of communication with the parties about the life insurance policy or Gentry and Joe's attempt to remove and replace the insurance agent without informing Russell was linked to their failure to take action to distribute the Disputed Property on November 17, 2019. Russell also contends

31

that Gentry and Joe made "false accusations" in this suit against Russell regarding his treatment of the life insurance policy proceeds and called the sheriff about Russell's entry on the 207-acre tract to access a storage container. Assuming without deciding these allegations are true, the allegations made in the lawsuit retain the judicial proceedings privilege and could not constitute evidence that Gentry and Joe acted in bad faith by failing to distribute the Trust property. *See Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46-47 (Tex. 2021).

Additionally, the evidence conclusively establishes that there was a legitimate dispute between the parties about what property was placed into the Trust which had to be decided by the jury, and the Trust agreement contains a provision excluding individual liability of any Trustee for failure to distribute Trust property and none of the parties challenged the language in the Trust.

The general provisions and powers section of the Trust included a provision regarding trustee liability. The provision provided as follows:

> [] Trustee Liability: Trustee in carrying out its powers and performing its duties may act in its discretion and shall be personally or individually liable only for fraud or acts or omissions in bad faith. Trustee, however, shall never have personal liability for making or failing to make any discretionary distributions to any beneficiary. Trustee shall not individually or personally be liable for any act or omission of any agent or selection and retention of such agent or employee.

We overrule cross-issue one.

32

Appellee's second, third and fourth issues on cross-appeal relate to the trial court's decision not to award Russell any attorney's fees. The jury awarded attorney's fees in response to Question Number 8 of the Jury Charge, which dealt with Russell's attorney's fees, and the jury awarded Gentry and Joe zero in attorney's fees. In the Final Judgment, the trial court struck any award of attorney's fees and held:

> [] The Court finds that it is neither equitable [n]or just to award attorneys fees in this case. All costs of court expended or incurred in this cause are the responsibility of the party incurring said costs.*
> . . . .
> *The trust agreement precludes liability without certain criteria which have not been met in this case.

Russell sought attorney's fees under section 37.009 of the Texas Civil Practices and Remedies Code (the Declaratory Judgments Act), and section 114.064 of the Texas Property Code (part of Subtitle B of Title 9 of the Texas Property Code entitled "Texas Trust Code"). Both the Declaratory Judgments Act and the Trust Code authorize a trial court to award attorney's fees in a proceeding under the respective statutes. *See Boyce*, 2022 Tex. App. LEXIS 8879, at *45. The Declaratory Judgments Act permits a court to "award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. "Section 114.064 of the Texas Trust Act provides that '[i]n any proceeding under this code the court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just.'" *Eaker v. Mangiameli*,

33

No. 09-19-00340-CV, 2021 Tex. App. LEXIS 8720, at *34 (Tex. App.—Beaumont Oct. 28, 2021, no pet.) (citing Tex. Prop. Code Ann. § 114.064). The standard of review for an award or denial of attorney's fees under both statutes is an abuse of discretion. *See Boyce*, 2022 Tex. App. LEXIS 8879, at **46-47. A trial court has broad discretion under the Declaratory Judgments Act in deciding whether to award attorney's fees. *Merzi v. Brumfield*, No. 09-21-00340-CV, 2023 Tex. App. LEXIS 4429, at *24 (Tex. App.—Beaumont June 22, 2023, no pet.) (mem. op.). In a declaratory judgment action, a trial court is not required to award attorney's fees to the prevailing party. *Ullrich v. Meijer*, No. 09-21-00090-CV, 2022 Tex. App. LEXIS 8805, at *14 (Tex. App.—Beaumont Dec. 1, 2022, no pet.) (mem. op.). A court may decide that fees should not be awarded if such an award would not be equitable and just in light of all the circumstances. *Forest Hills Improvement Ass'n, Inc. v. Flaim*, No. 09-18-00199-CV, 2019 Tex. App. LEXIS 8478, at *5 (Tex. App.—Beaumont Sept. 19, 2019, no pet.) (mem. op.). Since the decision to award attorney's fees is within a trial court's discretion, a trial court's decision will not be disturbed absent a clear showing of an abuse of discretion. *Wirt v. LaBelleCo Fab, LLC*, No. 09-22-00099-CV, 2024 Tex. App. LEXIS 2377, at **41-42 (Tex. App.—Beaumont Apr. 4, 2024, no pet.) (mem. op.).

Based on the record before the trial court, considering that Russell had previously challenged and lost his will contest of Duncan's Will, and further that

34

Russell, Gentry, and Joe each had a different view of what assets were in the Trust and whether there was an exhibit to the Trust and its contents, and the history of the claims between the parties, we cannot say the trial court abused its discretion in denying Russell any attorney's fees. On this record, the trial court could have reasonably decided that an award of attorney fees would not be equitable or just, and to have each party bear his own costs. We overrule cross-issues two, three, and four.

Having overruled all of Appellants' issues and Appellee's cross-issues, we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on February 19, 2026
Opinion Delivered July 16, 2026

Before Golemon, C.J., Johnson and Wright, JJ.

35